UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-62085-RUIZ/STRAUSS

BALESIA TECHNOLOGIES, INC., *et al.*,

      Plaintiffs,

v.

JUAN PABLO CALVO CUELLAR,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendant's Motion to Dismiss the Complaint ("Motion") [DE 7].[1]  This case has been referred to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law on the Motion [DE 16].  I have reviewed the Motion, the Response [DE 11] and Reply [DE 14] thereto, and all other pertinent portions of the record.  For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **GRANTED** and that the Amended Complaint [DE 18] be **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1] Although an Amended Complaint [DE 18] was filed after the Motion, it was done so – at my direction – solely to provide additional factual allegations regarding Defendant's citizenship (in paragraph 10).  *See* [DE 17]; [DE 18] at 1 n.1.  All allegations in the Complaint and Amended Complaint are the same with the exception of the allegations in paragraph 10.  As such, the filing of the Amended Complaint did not render the Motion moot.  *See* [DE 17].

As to the allegations added to paragraph 10 of the Amended Complaint, I find that they adequately resolve the issues I raised regarding the existence of diversity jurisdiction.

## BACKGROUND[2]

Plaintiff Empresa de Telecomunicaciones Nuevatel (PCS de Bolivia), S.A. ("Nuevatel") is a licensed provider of telecommunications services in Bolivia. Amended Complaint [DE 18] ¶ 17. The sole Defendant, Juan Pablo Calvo Cuellar ("Defendant" or "Calvo"), is the former CEO and Chairman of the Board of Directors of Nuevatel. *Id.* ¶ 3. He held those positions until July 2019 and March 29, 2022, respectively, and he also remained Nuevatel's attorney-in-fact until October 2022. *Id.* ¶¶ 3, 19.

The second Plaintiff – in addition to Nuevatel – is Balesia Technologies, Inc. ("Balesia"), which entered into a share purchase agreement ("SPA") on March 28, 2022 to acquire a majority interest in Nuevatel from Trilogy International Partners, Inc. ("Trilogy"). *Id.* ¶¶ 2, 27. Balesia had been approached a few months earlier by Phoenix Towers International, Inc. ("PTI"), which encouraged Balesia, with which it had a longstanding relationship, to acquire Trilogy's interest in Nuevatel. *Id.* ¶ 26. PTI is a sizeable creditor of Nuevatel – it leases several hundred (or more) cellular towers to Nuevatel. *Id.* ¶ 23. As a result of the sizeable amount of rent Nuevatel owes to PTI each month, PTI obtained the right to veto any sale of Trilogy's interest in Nuevatel. *Id.* Defendant had knowledge of PTI's veto rights. *Id.* ¶ 24.

Under the SPA between Balesia and Trilogy, Balesia agreed to acquire Trilogy's 100% interest in two entities that collectively held an ownership interest of nearly 73% in Nuevatel. *Id.* ¶ 27. The transaction between Balesia and Trilogy closed on May 14, 2022. *Id.*

Nuevatel, which holds certain concessions and licenses to operate public radio frequency spectrum in Bolivia, is subject to regulations adopted and enforced by the Autoridad de Regulación

---

[2] For purposes of considering the Motion, I accept the factual allegations in the Complaint as true and view them in the light most favorable to Plaintiffs. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019).

y Fiscalización de Telecomunicaciones y Transportes ("Bolivian Regulator"). *Id.* ¶ 18. Due to the change in control of Nuevatel that would result from the sale to Balesia, Nuevatel submitted an application for approval of change of effective control of Nuevatel ("Application") to the Bolivian Regulator. *Id.* ¶ 31. Nuevatel ultimately withdrew the Application (at Balesia's request) on August 16, 2022. *Id.* ¶ 32. However, 6 days later, the Bolivian Regulator delivered a resolution – backdated to August 15, 2022 – to Nuevatel denying the Application. *Id.* ¶ 33. Nuevatel has appealed the denial; its appeal remains pending before the Bolivian Regulator. *Id.*

Since the denial of the Application, Nestor Rios Rivera ("Rios"), the Executive Director of the Bolivian Regulator has indicated, in multiple widely reported press conferences and media interviews, that Nuevatel and Balesia engaged in illegal conduct in connection with the submission and subsequent withdrawal of the Application. *Id.* ¶ 34. Due to the denial of the Application and the related negative press coverage, Balesia has lost opportunities with outside investors, which has delayed it from deploying its planned capital investment in Nuevatel. *Id.* ¶ 35. This delay has damaged Nuevatel. *Id.* ¶ 36.

On September 7, 2022 – a few weeks after the Bolivian Regulator denied the Application – Defendant contacted PTI's CEO and advised that he had secured funding from an undisclosed third party who was willing to acquire Balesia's interest in Nuevatel. *Id.* ¶ 37.[3] Defendant sought a waiver of PTI's veto rights to allow for the acquisition of Balesia's interest. *Id.* In the weeks that followed, an individual named Cyrill Wiget ("Wiget") contacted both PTI's CEO and Balesia's CEO expressing interest in, and ultimately making a non-binding offer to acquire, Balesia's interest in Nuevatel. *See id.* ¶¶ 38-40. The offer letter submitted by Wiget was signed

---

[3] This was not the first time that Defendant expressed interest in purchasing a majority stake in Nuevatel. Between 2019 and 2021, Defendant approached PTI on several occasions seeking tentative approval to purchase Trilogy's interest in Nuevatel. *See id.* ¶ 25.

by the President of Los La Pachos, S.A., which the letter indicated was an affiliate of Supercanal, S.A.  *Id.* ¶ 40.  Plaintiffs believe that Defendant is affiliated with Wiget and the offer that he submitted.  *See id.* ¶ 44.  Plaintiffs also believe that Defendant has a connection to the Bolivian Regulator's decision to deny the Application.  *See id.* ¶¶ 40-44.

Consequently, Plaintiffs commenced this lawsuit against Defendant.  In Count I, Nuevatel brings a claim for breach of fiduciary duty, alleging that Defendant's "conduct, including attempting to misappropriate Nuevatel's business opportunities and interfere with Balesia's acquisition of Nuevatel and approval from the Bolivian Regulator for personal gain, breached his fiduciary duties and duties of loyalty to Nuevatel." *Id.* ¶ 48.  In Count II, both Plaintiffs bring a claim for tortious interference, alleging that Defendant tortiously interfered with the business relationship between Plaintiffs and PTI.  *Id.* ¶ 53.

## <u>LEGAL STANDARD</u>

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a).  Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).   Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch.*, 942 F.3d at 1229; *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019).   But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## <u>ANALYSIS</u>

In the Motion, Defendant contends that both counts of the Complaint should be dismissed pursuant to Rule 12(b)(6).  Alternatively, Defendant argues that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because the claims raised therein are not ripe.  While Defendant raises its ripeness argument "in the alternative" to its Rule 12(b)(6) arguments, I address the issue of ripeness first – in Section I below – because "ripeness 'goes to whether the district court ha[s] subject matter jurisdiction to hear the case,'" *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 591 (11th Cir. 1997) (citation omitted), and the Court is powerless to continue to the merits of the case if it lacks subject matter jurisdiction.  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (11th Cir. 2005); *see also S. Grande View Dev. Co., Inc. v. City of Alabaster, Ala.*, 1 F.4th 1299, 1305 (11th Cir. 2021) ("Ripeness, like standing, 'present[s] the threshold jurisdictional question of whether a court may consider the merits of a dispute.'" (quoting *Elend v. Basham*, 471

F.3d 1199, 1204 (11th Cir. 2006))).  Because I find that the Complaint should not be dismissed for lack of ripeness, I address Defendant's Rule 12(b)(6) arguments in Section II below.

## I.  <u>RIPENESS</u>

I am unable to conclude, at least at this stage of the proceeding, that Plaintiffs' claims are not ripe.  "Federal courts are courts of limited jurisdiction."  *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  "The most notable—and most fundamental—limits on the federal 'judicial Power' are specified in Article III of the Constitution, which grants federal courts jurisdiction only over enumerated categories of 'Cases' and 'Controversies.'"  *Id.* (citing U.S. Const. art. III, § 2).  "This case-or-controversy requirement comprises three familiar 'strands': (1) standing, (2) ripeness, and (3) mootness."  *Id.* (citing *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011)).  Ripeness, the strand at issue here, "keeps federal courts from deciding cases prematurely" and "protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes."  *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1227 (11th Cir. 2006) (citations omitted).  It "seeks to avoid entangling courts in the hazards of premature adjudication."  *Digital Props.*, 121 F.3d at 589 (citation omitted).  "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted).  Ripeness is a fact-sensitive issue.  *See S. Grande View Dev.*, 1 F.4th at 1306-07.  In other words, questions of ripeness "turn on the specific facts of the case."  *Id.* at 1315.

Defendant raises one argument regarding lack of ripeness in the Motion.  Specifically, asserting that "[t]he Complaint is entirely dependent on the Bolivian Regulator's decision," and noting that the Complaint alleges that the Bolivian Regulator's decision has been appealed (with

the appeal remaining pending), Defendant contends that this action is not ripe because the pending

appeal of the Bolivian Regulator's decision "could obviate the claims in the Complaint."  Motion

at 16.  In other words, Defendant indicates that any damages will be erased if Plaintiffs succeed

on their appeal.  *See* [DE 14] at 11.

        The problem with Defendant's ripeness argument is that the Amended Complaint plainly

alleges otherwise.  Significantly, because Defendant's ripeness challenge is a facial – not factual

– challenge, Plaintiffs have "'safeguards similar to those retained when a Rule 12(b)(6) motion to

dismiss for failure to state a claim is raised,' and 'the court must consider the allegations in the

plaintiff's complaint as true.'"  *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d

1229, 1233 (11th Cir. 2008) (citation omitted).  Here, Plaintiffs expressly allege that Balesia has

already lost opportunities with outside investors and that it has been unable to proceed with its

planned capital investment in Nuevatel due to the Bolivian Regulator's denial of the Application

and due to related negative press coverage.  Amended Complaint ¶ 35.  Likewise, Plaintiffs allege

that the Bolivian Regulator's denial of the Application has damaged Nuevatel by delaying

Balesia's planned investment into Nuevatel.  *Id.* ¶ 36.  Thus, the Amended Complaint plausibly

alleges damages that would not be erased even if Plaintiffs' appeal of the Bolivian Regulator's

decision is successful.[4]  As such, Defendant's ripeness argument must be rejected (at least at this

stage).[5]

## II.    DISMISSAL UNDER RULE 12(b)(6)

### A.  COUNT I (BREACH OF FIDUCIARY DUTY)[6]

The Complaint fails to include sufficient facts to plausibly allege that Defendant breached

his fiduciary duty to Nuevatel.  In Count I, Nuevatel alleges that Defendant owed fiduciary duties

to Nuevatel (1) as its CEO, (2) as the Chairman of the Nuevatel Board, and (3) as Nuevatel's

attorney-in-fact (by virtue of a power of attorney that Defendant held).  *See* Amended Complaint

---

[4] Even if Plaintiffs were to succeed on their appeal, and even if succeeding on that appeal would erase any actual damages, that would not affect the ripeness of any claim for breach of fiduciary duty (at least under Florida law, which permits nominal damages for such a claim).  *See Ron D. Beal, P.A. v. Hartford Fire Ins. Co.*, No. 20-14854, 2021 WL 2935338, at *3-4 (11th Cir. July 13, 2021) (indicating that because nominal damages were available for a breach of contract claim under state law, the claim became ripe immediately after the breach, even if the extent of damages was not yet known); *Land & Sea Petroleum Holdings, Inc. v. Leavitt*, 321 So. 3d 810, 817 (Fla. 4th DCA 2021) ("A nominal damages award is appropriate when there is a breach of contract, breach of fiduciary duty, or an aiding and abetting a breach of fiduciary duty cause of action."); *Highsmith v. ECAA, LLC*, 138 So. 3d 544, 544 (Fla. 1st DCA 2014) ("Where a breach of fiduciary duty is shown but no actual damages are proved, nominal damages may be awarded." (quoting *Minotty v. Baudo*, 42 So. 3d 824, 836 (Fla. 4th DCA 2010))).  Plaintiffs' tortious interference claim, on the other hand, does require actual damages.  *Land & Sea Petroleum*, 321 So. 3d at 817.

[5] The Amended Complaint also strongly suggests that the appeal (before the same Bolivian Regulator that denied the Application and that has been openly critical of Plaintiffs), *see* Amended Complaint ¶¶ 33-34, is futile.  *Cf. S. Grande View Dev.*, 1 F.4th at 1308 n.12 ("Even assuming *arguendo* the City's decision was not final, we still hold that this case is ripe because of the futility exception: 'An exception to the final decision requirement exists where it would be futile for the plaintiff to pursue a final decision.'" (citation omitted)).

[6] The parties dispute whether Florida or Bolivian law applies to Count I.  They also dispute whether it is premature to resolve this choice-of-law issue at the motion-to-dismiss stage.  Because the factual allegations are inadequate (under *Iqbal* and *Twombly*) to sustain Count I regardless of whether Florida or Bolivian law applies, I do not address the choice-of-law issue.  I also do not reach one argument that Defendant makes for dismissal (that Count I should be dismissed because Nuevatel did not follow the procedure mandated under Bolivian law to pursue a breach of fiduciary duty claim).  It is not necessary to reach the issue because the Amended Complaint is subject to dismissal for other reasons.

¶¶ 19, 47.  There is no dispute that Defendant owed fiduciary duties to Nuevatel while serving as its CEO (until July 2019) and while serving as the Chairman of the Board (until March 29, 2022). What is disputed, however, is whether the Amended Complaint plausibly alleges that Defendant continued to owe fiduciary duties to Nuevatel between March 29, 2022 and October 2022 – the period of time during which Defendant was no longer Chairman or CEO but allegedly continued to retain a power of attorney.[7]  As discussed in Section 1 below, Nuevatel has failed to plausibly allege that Defendant owed fiduciary duties to Nuevatel after his tenure as Chairman ended.

After alleging the sources of Defendant's fiduciary duties to Nuevatel, Count I alleges two types of wrongdoing by Defendant that give rise to Nuevatel's breach of fiduciary duty claim: (1) Defendant attempted to misappropriate Nuevatel's business opportunities; and (2) Defendant "interfere[d] with Balesia's acquisition of Nuevatel and approval from the Bolivian Regulator for personal gain."  *Id.* ¶ 48.  As discussed in Section 2 below, Nuevatel has failed to allege sufficient facts to plausibly establish such wrongdoing.

### 1.   Existence of Fiduciary Duty

The Amended Complaint fails to adequately allege that Defendant owed fiduciary duties to Nuevatel after Defendant ceased being the Chairman of Nuevatel's Board on March 29, 2022. Again, the alleged source of Defendant's fiduciary duties after March 2022 was the power of

---

[7] It is significant whether Defendant owed fiduciary duties to Nuevatel during this period of time because the bulk of Defendant's alleged wrongdoing occurred following Defendant's tenure as Chairman.  Notably, Plaintiffs even acknowledge in their response that Count I is premised upon Defendant's conduct following his tenure as Chairman.  *See* [DE 11] at 7 (arguing that Defendant "was not an officer, director, or shareholder during the relevant time period").  To be fair, other portions of Plaintiffs' response contend that certain of Defendant's actions during the time Defendant served as Chairman establish separate breaches of Defendant's fiduciary duties. However, as discussed further in Section 2 below, the Amended Complaint fails to provide notice that Count I is based upon such actions and/or fails to allege sufficient facts to plausibly establish that such actions give rise to a claim for breach of fiduciary duty.

attorney that he held.  As an initial matter, the allegations regarding Defendant's power of attorney are quite slim.[8]

Regardless, accepting that the allegation that Defendant held a power of attorney bestowing "general and broad powers" upon him to conduct business on behalf of Nuevatel (*see supra* note 8) is generally sufficient on its own to establish Defendant owed fiduciary duties to Nuevatel, it is not here.  That is because the power of attorney document relevant here undercuts Nuevatel's contention that Defendant continued to owe fiduciary duties to Nuevatel – by virtue of the power of attorney – after Defendant's tenure as Chairman.  It does so because it expressly states that the power of attorney was being granted to Defendant "IN HIS CAPACITY AS CHAIRMAN OF THE BOARD OF DIRECTORS."  [DE 7-5].  Significantly, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (citation omitted).  Thus, the power of attorney document governs, so long as the Court may consider it in connection with the motion to dismiss.

The Court indeed may consider the power of attorney document even though it is not attached to the Amended Complaint.  Ordinarily, courts may not look beyond a pleading – including exhibits thereto, which are treated as part of the pleading – when ruling on a motion to dismiss under Rule 12(b)(6).  *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020); *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019).  Nonetheless, documents attached to a motion to dismiss may be considered without converting the motion into a motion for summary judgment if the documents are (1) "central to

---

[8] *See* Amended Complaint ¶ 3 ("Until approximately October 2022, Calvo remained Nuevatel's attorney-in-fact authorized to represent Nuevatel."); *id.* ¶ 19 ("[H]e held general and broad powers as an attorney-in-fact authorized to conduct business on behalf of Nuevatel, including but not limited to authority to represent Nuevatel before the Bolivian Regulator. Calvo retained a power of attorney for Nuevatel until approximately October 2022.").

the plaintiff's claim" and (2) "their authenticity is not challenged." *Crowder*, 963 F.3d at 1202 (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)); *see also Crawford's Auto Ctr.*, 945 F.3d at 1162 (citing *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015)). A document is central to a complaint when it is "a necessary part of [a plaintiff's] effort to make out a claim." *Kalpakchian v. Bank of Am. Corp.*, 832 F. App'x 579, 583 (11th Cir. 2020) (quoting *Day*, 400 F.3d at 1276). Additionally, the Eleventh Circuit has "held that relationship-forming contracts are central to a plaintiff's claim." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005)); *see also Kalpakchian.*, 832 F. App'x at 583.

Here, Plaintiffs do not challenge the authenticity of the power of attorney document that Defendant has attached to the Motion. They also do not appear to dispute Defendant's contention that the power of attorney document is central to Nuevatel's claim for breach of fiduciary duty. Nor could they reasonably do so. The power of attorney document is a necessary part of Nuevatel's effort to establish its breach of fiduciary duty claim, as it is the sole source of Defendant's alleged duty during the period of time in which the alleged wrongdoing related to the Bolivian Regulator occurred. Simply stated, the power of attorney document goes to the heart of Plaintiff's breach of fiduciary duty claim. *Cf. Kalpakchian.*, 832 F. App'x at 583 ("[T]he contract governing the contractual relationship Kalpakchian alleges Defendants breached goes to 'the very heart' of her contract claim." (citing *Day*, 400 F.3d at 1276)). As such, the power of attorney document is central to Count I. Because it is central and its authenticity is not disputed, it is proper to consider it in conjunction with the Motion.[9] In other words, the power of attorney document should be

---

[9] *Cf. Martin v. IntegraMed, Inc.*, No. 10 CV 3618, 2011 WL 2470617, at *3 (N.D. Ill. June 21, 2011) ("Dr. Martin's claims rest heavily on the existence of this Power of Attorney, which is also

considered part of the Amended Complaint for purposes of the Motion.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997).  And because the power of attorney document undermines Nuevatel's allegation that Defendant continued to owe fiduciary duties to Nuevatel following Defendant's tenure as Chairman (given that the document expressly states it is granting a power of attorney to Defendant in his capacity as Chairman), the Amended Complaint fails to plausibly allege the existence of a fiduciary duty after Defendant's tenure as Chairman ended.[10]

## 2.  Alleged Wrongdoing Underlying Count I

Even if Defendant owed fiduciary duties to Nuevatel until October 2022, Nuevatel has failed to allege sufficient facts to plausibly establish a breach of such duties on the part of Defendant (at any time).  Again, the primary alleged wrongdoing concerns Defendant's alleged interference with the Bolivian Regulator's decision following Defendant's tenure as Chairman.  In

the foundation for the fiduciary duties allegedly breached by VCA; and therefore, the court will consider it.").

[10] I note that Plaintiffs briefly argue that under Bolivian law, the power of attorney remained effective following Defendant's tenure as Chairman because it would only terminate upon being formally revoked.  But Plaintiffs' argument in this regard is made based upon a declaration [DE 11-1] attached to Plaintiffs' response, which was submitted to counter a declaration that Defendant submitted with his Motion.  Notably, however, Plaintiffs argue first and foremost that the Court should not consider the declaration Defendant submitted with the Motion, and Plaintiffs indicate that they submitted their own declaration with their response to underscore that it would be improper to consider these types of declarations at this stage.  *See* [DE 11] at 10 (arguing that "the Court should reject Calvo's attempts to supplant the allegations in the Complaint with a declaration and extraneous documents, particularly where, as here, those materials are outside the four corners of the Complaint, incomplete, and outright wrong.").  Here, I agree with Plaintiffs that it would be inappropriate to consider the declarations that the parties submitted with the briefing on the Motion at this stage.  However, to the extent that Plaintiffs contend the Court should not consider the power of attorney document, they are incorrect for the reasons discussed above.  Additionally, I note that Plaintiffs fail to squarely address the implication of the power of attorney only being granted to Defendant in his capacity as Chairman, which, as stated above, directly undermines the allegation that Defendant continued to owe fiduciary duties to Nuevatel following his tenure as Chairman.

the Motion, Defendant contends that Plaintiffs have failed to plausibly allege a link between Defendant and the Bolivian Regulator's decision.  According to Defendant, the only allegations in the Amended Complaint that suggest such a link are "barebones" allegations based "upon information and belief" that should not be accepted as true.  Plaintiffs respond that they "have a good faith belief and understanding that Calvo, in coordination with others, wrongly influenced the Bolivian Regulator's decision to deny the Application" because: (1) "the Bolivian Regulator suspiciously denied the Application after it had already been withdrawn"; (2) "the Bolivian Regulator needlessly made highly irregular, gratuitously inflammatory public statements about the Application"; and (3) "before any decision on Appeal was made, Calvo was actively attempting to cause the sale of Nuevatel."  [DE 11] at 5.

    While I agree with Plaintiffs that it is reasonable to characterize the circumstances surrounding the Bolivian Regulator's denial of the Application as suspicious (based on the allegations of the Amended Complaint), I ultimately agree with Defendant that Plaintiffs have failed to plausibly allege a link between Defendant and the Bolivian Regulator's decision.  In attempting to establish such a link, the Amended Complaint alleges that, "[u]pon information and belief, there is a direct connection between Calvo, and Calvo's desire to acquire Nuevatel, and the adverse actions Rios and the Bolivian Regulator have taken with respect to the Application." Amended Complaint ¶ 43.  Plaintiffs also allege that, "[u]pon information and belief, Roque Roy Mendez[11] is able to and has exercised influence over Rios and the Bolivian Regulator in connection with such adverse actions."  *Id.* ¶ 43.  Then, the Amended Complaint alleges, again "[u]pon information and belief," that "Calvo is affiliated with Cyrill Wiget, Roque Roy Mendez,

---

[11] Roque Roy Mendez is the CEO of Entel, one of three major nationally licensed mobile network operators in Bolivia (Nuevatel being one of the other three).  *Id.* ¶¶ 41-42.  He previously served as the Executive Director of the Bolivian Regulator (from 2016-2019).  *Id.* ¶ 42.

Los La Pachos, and/or Supercanal in connection with overtures that Balesia has received seeking to acquire Balesia's equity ownership interest in Nuevatel, and PTI has received seeking a waiver of PTI's veto rights in connection with any change of ownership of Nuevatel." *Id.* ¶ 44.

The foregoing allegations, in paragraphs 43 and 44 of the Amended Complaint, are the only allegations that suggest any link between Defendant and the Bolivian Regulator's decision.[12] When allegations such as these are based *solely* "upon information and belief," courts need not accept them as true at the motion-to-dismiss stage. *See Smith v. City of Sumiton*, 578 F. App'x 933, 936 n.4 (11th Cir. 2014) ("[F]or purposes of a Rule 12(b)(6) motion to dismiss, we do not have to take as true allegations based merely 'upon information and belief.'" (citing *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013))).  Courts should only accept such allegations as true when they are supported by non-conclusory factual allegations.  *See Jones v. Unity Behav. Health, LLC*, No. 20-14265, 2021 WL 5495578, at *3 n.1 (11th Cir. Nov. 23, 2021) ("Because that conclusory assertion [made upon information and belief] is not backed up by any factual allegations, we don't accept it as true in reviewing the dismissal of these claims." (citing *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002))); *Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc.*, 522 F. Supp. 3d 1202, 1209 (S.D. Fla. 2021) ("Although 'information and belief pleading can sometimes survive a motion to dismiss . . . where a plaintiff . . . alleges specific facts to support a claim, conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the plausibility standard.'" (quoting *Scott v. Experian Info. Sols., Inc.*, No. 18-cv-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (cleaned up)));

---

[12] Some allegations in the Nature of the Action section at the beginning of the Amended Complaint also allege Defendant's involvement, but those allegations are wholly conclusory on their face. *See* Amended Complaint ¶¶ 4-7.

*see also Galvez v. Fanjul Corp.*, No. 20-CV-80123-RAR, 2021 WL 3878322, at *1-2 (S.D. Fla. Aug. 31, 2021).

Paragraphs 43 and 44 of the Amended Complaint, however, are conclusory allegations that are not supported by any factual allegations.  In other words, what is missing from the Amended Complaint are the factual allegations that plausibly establish the allegations made upon information and belief in paragraphs 43 and 44 of the Amended Complaint.  Simply because the circumstances surrounding the Bolivian Regulator's denial of the Application, including the public statements made by Rios, may have been suspicious does not mean that it is reasonable to infer that Defendant had anything to do with the Bolivian Regulator's decision.  Nor does adding into the equation Defendant's repeated, expressed interest in purchasing a majority stake in Nuevatel make it reasonable to infer a link between Defendant and the Bolivian Regulator's decision without more.  Defendant's interest in purchasing Nuevatel perhaps makes such a link conceivable, but this factual allegation alone does not nudge Plaintiff's claims regarding such a link "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  Rather, the Amended Complaint presently alleges nothing more than a conspiracy theory that only ties Defendant to the Bolivian Regulator's decision based on speculation alone.  *Cf. Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[A]llegations must proffer enough factual content to 'raise a right to relief above the speculative level.'" (quoting *Twombly*, 550 U.S. at 555)).  Because no facts are alleged to plausibly show that Defendant played a role in, or was the impetus behind, the Bolivian Regulator's decision, Defendant's alleged wrongdoing related to the Bolivian Regulator's decision cannot be used to sustain Plaintiffs' claims against Defendant.  Moreover, as discussed above, the Amended

Complaint does not include sufficient allegations to establish that Defendant owed fiduciary duties to Nuevatel at the time of this alleged wrongdoing.

Beyond the allegations related to the Bolivian Regulator's decision, the only other wrongdoing specified in Count I is that Defendant attempted to misappropriate Nuevatel's business opportunities.  But it is unclear what factual allegations, if any, plausibly demonstrate such alleged misappropriation.  One owing fiduciary duties to a corporation violates the doctrine of corporate opportunity when he "acquires, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to is existence." *Marine Turbo Eng'g, Ltd. v. Turbocharger Servs. Worldwide, LLC*, No. 11-60621-CIV, 2011 WL 6756916, at *5 (S.D. Fla. Dec. 22, 2011) (quoting *Farber v. Servan Land Co., Inc.*, 662 F.2d 371 (5th Cir. Unit B 1981)).  Here, no allegations of the Amended Complaint suggest that Defendant acquired any such property in opposition to Nuevatel.

Although Count I only indicates it is premised on the foregoing wrongdoing – misappropriation of corporate opportunities and wrongdoing concerning the Bolivian Regulator's decision – Plaintiffs' response to the Motion contends that Count I is also supported by other independent wrongdoing by Defendant: (1) Defendant's attempts between 2019 and 2021 to acquire Trilogy's interest in Nuevatel and to seek PTI's approval; and (2) wrongdoing related to approval of certain Nuevatel contracts.  *See* [DE 11] at 4; Amended Complaint ¶¶ 24-25, 30.  However, Defendant correctly points out that a party may not amend a complaint through briefing on a motion to dismiss.  *See Pirowskin v. Atl. & Pac. Ass'n Mgmt., Inc.*, No. 20-CV-21380, 2020 WL 2322920, at *2 (S.D. Fla. May 11, 2020); *Baker v. Warner/Chappell Music, Inc.*, No. 14-22403-CIV, 2017 WL 4310750, at *8 (S.D. Fla. Sept. 28, 2017).  Here, Count I failed to provide notice that it was premised upon any wrongdoing related to Defendant's attempt to acquire a

majority stake in Nuevatel (during the time he was serving as Nuevatel's Chairman).   Likewise,

Count I failed to provide notice that it was premised upon Defendant's alleged wrongdoing related

to the Nuevatel contracts.

Even if Count I had indicated that it was premised upon this additional alleged wrongdoing,

the Amended Complaint does not contain sufficient factual allegations to show that such alleged

wrongdoing gives rise to a claim for breach of fiduciary duty.   In paragraphs 24 and 25 of the

Amended Complaint, Plaintiffs merely allege that:

> 24. Based on confidential business information received during his tenure as CEO
> and/or Chairman of the Board of Nuevatel, Calvo had knowledge of PTI's veto
> rights.
>
> 25. Between 2019 and 2021, Calvo approached PTI on several occasions seeking
> at least tentative approval of transactions, under which Calvo held himself out as a
> principal, to acquire Trilogy's interest in Nuevatel. In each instance, PTI declined
> Calvo's overtures as lacking sufficient financial backing to assure the continued
> financial success of Nuevatel necessary to support Nuevatel's rent payment
> obligations to PTI.

It is unclear how these allegations, accepted as true, establish that Defendant breached his fiduciary

duty to Nuevatel, and notably, Plaintiffs do nothing in their response to even attempt to explain

how these allegations amount to a breach of fiduciary duty.

Regarding the alleged wrongdoing concerning Nuevatel contracts, the Amended

Complaint solely alleges the following:

> Based on recommendations or instruction made by Balesia, Nuevatel cancelled
> dozens of "consulting" and similar contracts for marketing, advertising and other
> services that were wasteful, unnecessary, and/or redundant of services being
> performed directly by Nuevatel employees. Upon information and belief, some or
> all of the cancelled contracts (and potentially other contracts not yet discovered)
> had been negotiated or approved by Calvo, his family members, entities affiliated
> with Calvo, and/or Nuevatel employees at Calvo's instigation, in exchange for
> improper payments or other consideration received by or for the benefit of Calvo
> from the contractual counter-parties. Nuevatel has suffered damages as a result of
> signing or maintaining in force these contracts containing improper and
> unnecessary payments to the contracting counterparties.

Amended Complaint ¶ 30.  While the foregoing allegation characterizes the services being provided under the contracts as "wasteful, unnecessary, and/or redundant," it fails to include factual allegations to indicate why the services were wasteful, and more importantly, to establish that Defendant breached his fiduciary duty as a result of any role he played in negotiating or approving these contracts.  At most, paragraph 30 alleges, *in a conclusory manner*, that Defendant engaged in misconduct in connection with at least some of these contracts.  But the factual allegations supporting the conclusory allegations in paragraph 30 are plainly missing.[13]

For the foregoing reasons, Count I should be dismissed.

### B.  COUNT II (TORTIOUS INTERFERENCE)[14]

In Count II, both Plaintiffs bring a claim for tortious interference, alleging that Defendant tortiously interfered with the business relationship between Plaintiffs and PTI.  *See* Amended Complaint ¶ 53 ("Calvo, individually and with the assistance of others, has engaged in an intentional and unjustified interference in the business relationship between Nuevatel, Balesia, and PTI."); *see also id.* ¶ 54 ("Nuevatel and Balesia have been damaged by Calvo's intentional and unjustified interference in the business relationship between Nuevatel, Balesia, and PTI.").  As discussed herein, Count II should be dismissed.

Under Florida law, a plaintiff must establish the following elements to prevail on a claim for tortious interference with a business relationship: "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the

---

[13] None of this is to say that Plaintiffs should allege every detail regarding every contract at issue. They shouldn't.  After all, alleging every last detail would run counter to the short and plain statement requirement of Rule 8.  But Plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Presently, such factual content is missing.

[14] The parties agree that Florida law applies to Count II.

defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) *damage to the plaintiff as a result of the breach of the business relationship*." *Bortell v. White Mountains Ins. Grp., Ltd.*, 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009) (quoting *N. Am. Van Lines, Inc. v. Ferguson Transp., Inc.*, 639 So. 2d 32, 33 (Fla. 4th DCA 1994)) (emphasis added); *see also Duty Free Americas, Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1279 (11th Cir. 2015).

In the Motion, Defendant contends that Plaintiffs have failed to state a claim for tortious interference because they do not "allege any interference with, or damage to, the relationship between PTI and Nuevatel and Balesia." Motion at 13.  According to Defendant, "[a]t most, the Complaint alleges an unsuccessful overture by Calvo to purchase Nuevatel after the Bolivian Regulator's rejection of Nuevatel's transfer of control application." *Id.*  In their Response, Plaintiffs contend that they have alleged intentional and unjustified interference for two reasons: (1) Defendant attempted to induce PTI to waive its veto rights to the detriment of Balesia and Nuevatel; and (2) Defendant made unsolicited offers to Balesia to purchase Balesia's interest in Nuevatel.  *See* [DE 11] at 6 (citing Amended Complaint ¶¶ 37, 54).  Plaintiffs contend such interference damaged them.  *See id.*

Even assuming Plaintiffs have adequately alleged intentional and unjustified interference with the relationship between Plaintiffs and PTI (which, even accepting the allegations as true, seems doubtful), Plaintiffs have clearly failed to plausibly allege the fourth tortious interference element – "damage to the plaintiff as a result of the breach of the business relationship." *Bortell*, 2 So. 3d at 1048.  In fact, Plaintiffs have not alleged this element at all, plausibly or otherwise. They have alleged generally, and in a conclusory fashion, that Defendant's interference damaged the business relationship between them and PTI, *see* Amended Complaint ¶ 54, but that is it.  In other words, the Amended Complaint does not allege, or even suggest, that any *breach* of the

business relationship between Plaintiffs and PTI occurred.  Significantly, "[a]n integral element of a claim of tortious interference with a business relationship requires proof of damage to the plaintiff *as a result of the breach of the relationship*."  *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985)) (emphasis added).  This integral element, however, is not present here.

Relatedly, "[u]nsuccessful interference is simply not the kind of interference upon which a tort may be founded."  *Id.* (quoting *Am. Med. Int'l, Inc. v. Scheller*, 462 So. 2d 1, 9 (Fla. 4th DCA 1984)).[15]  And Defendant is correct that what the Amended Complaint alleges here is, at most, unsuccessful interference.[16]  In other words, the Amended Complaint provides absolutely no indication that Defendant was successful in any of his overtures or attempts to obtain a waiver of PTI's veto rights or to purchase Balesia's interest in Nuevatel.  On the contrary, the allegations seem to indicate that the relationship between Plaintiffs and PTI remains intact,[17] notwithstanding the allegation that Balesia has lost opportunities with outside investors (which, in any event, is not damage sustained as a result of the breach of a business relationship between Plaintiffs and PTI).  Accordingly, Count II should be dismissed.

---

[15] *See also Adv. Magnet Lab, Inc. v. Meinke*, No. 6:20-CV-712-ORL-37EJK, 2020 WL 9549853, at *3 (M.D. Fla. Nov. 24, 2020); *Sandshaker Lounge & Package Store LLC v. RKR Beverage Inc*, No. 3:17-CV-00686-MCR-CJK, 2018 WL 7351689, at *7 (N.D. Fla. Sept. 27, 2018).

[16] Notably, Plaintiffs do not even respond to Defendant's "unsuccessful interference" argument.

[17] *Cf. Am. Med. Int'l*, 462 So. 2d at 9 ("In the context of this case, the fact that no doctor abandoned or breached the existing relationship with Dr. Scheller was of crucial significance. Since the relationships between Dr. Scheller and the 63 designating physicians remained intact, there was no cause of action proved . . . .").

## <u>CONCLUSION</u>

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 7] be **GRANTED** and that both counts of the Amended Complaint [DE 18] be **DISMISSED**.[18]

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 27th day of April 2023.

**Jared M. Strauss**
**United States Magistrate Judge**

---

[18] However, as discussed above, the Amended Complaint should not be dismissed on ripeness grounds.  Rather, it should be dismissed for failing to state a claim upon which relief can be granted.

21