## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-CV-62085-RUIZ/STRAUSS

**BALESIA TECHNOLOGIES, INC.,** *et al.*,

      Plaintiffs,

v.

**JUAN PABLO CALVO CUELLAR,**

      Defendant.

_____/

### REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendant's Motion to Dismiss Second Amended Complaint ("Motion") [DE 32]. This case has been referred to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law on the Motion [DE 33]. I have reviewed the Motion, the Response [DE 36] and Reply [DE 37] thereto, and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **GRANTED**.

### BACKGROUND[1]

Plaintiff Empresa de Telecomunicaciones Nuevatel (PCS de Bolivia), S.A. ("Nuevatel") is a licensed provider of telecommunications services in Bolivia. Second Amended Complaint ("SAC") [DE 31] ¶ 15. Nuevatel is one of three mobile telecommunications operators regulated by the Bolivian government. *Id.* ¶ 2. The sole Defendant, Juan Pablo Calvo Cuellar ("Defendant"

---

[1] For purposes of considering the Motion, I accept the factual allegations in the Second Amended Complaint as true and view them in the light most favorable to Plaintiffs. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019).

or "Calvo"), is the former CEO and Chairman of the Board of Directors of Nuevatel.  *Id.*  He held those positions until 2019 and March 29, 2022, respectively.  *Id.* ¶¶ 2, 17.

The second Plaintiff – in addition to Nuevatel – is Balesia Technologies, Inc. ("Balesia"), which entered into a stock purchase agreement ("SPA") on March 28, 2022 to acquire a majority interest in Nuevatel from Trilogy International Partners, Inc. ("Trilogy").  *Id.* ¶¶ 3, 32. Specifically, Balesia agreed to acquire a 100% equity ownership interest in two entities that collectively hold an ownership interest of approximately 71.5% in Nuevatel.  *Id.* ¶¶ 3, 13, 14, 32. Defendant knew of and participated in the negotiations leading up to the SPA.  *Id.* ¶¶ 3, 18.  On May 14, 2022, the transaction between Balesia and Trilogy closed.  *Id.* ¶ 3.

Balesia had been approached in late 2021 by Phoenix Towers International, Inc. ("PTI"), which encouraged Balesia, with which it had a longstanding relationship, to acquire Trilogy's interest in Nuevatel.  *Id.* ¶ 28.  PTI is a sizeable creditor of Nuevatel – it leases several hundred (or more) cellular towers to Nuevatel.  *Id.* ¶ 25.  As a result of the sizeable amount of rent Nuevatel owes to PTI each month, PTI obtained the right to veto any sale of Trilogy's interest in Nuevatel. *Id.*  Defendant had knowledge of PTI's veto rights.  *Id.* ¶ 26.

Nuevatel, which holds certain concessions and licenses to operate public radio frequency spectrum in Bolivia, is subject to regulations adopted and enforced by the Autoridad de Regulación y Fiscalización de Telecomunicaciones y Transportes ("Bolivian Regulator").  *Id.* ¶ 16.  Due to the change in control of Nuevatel that would result from the sale to Balesia, Nuevatel submitted – on March 7, 2022 (when Calvo was still Chairman) – an application for approval of change of effective control of Nuevatel ("Application") to the Bolivian Regulator.  *Id.* ¶ 31.  Although Plaintiffs expected that the Application would be approved as a matter of course, things did not proceed as expected.  *Id.* ¶¶ 31, 36.  Prior to May 27, 2022, the Bolivian Regulator did not take

any action or request any information.  *Id.* ¶ 36.  After that date, however, the Bolivian Regulator began requesting irrelevant information, which Plaintiffs provided notwithstanding the irregular nature of the requests.  *Id.*  Nuevatel ultimately withdrew the Application (at Balesia's request) on August 16, 2022.  *Id.* ¶ 37.  However, six days later, the Bolivian Regulator delivered a resolution – backdated to August 15, 2022 – to Nuevatel denying the Application.  *Id.* ¶ 38.  Nuevatel has appealed the denial; its appeal remains pending before the Bolivian Regulator.  *Id.*

Since the denial of the Application, Nestor Rios Rivera ("Rios"), the Executive Director of the Bolivian Regulator, has indicated, in multiple widely reported press conferences and media interviews, that Nuevatel and Balesia engaged in illegal conduct in connection with the submission and subsequent withdrawal of the Application.  *Id.* ¶ 39.  Due to the denial of the Application and the related negative press coverage, Balesia has lost opportunities with outside investors, which has delayed it from deploying its planned capital investment in Nuevatel.  *Id.* ¶ 40.  This delay has damaged Nuevatel.  *Id.* ¶ 41.

On September 7, 2022 – a few weeks after the Bolivian Regulator denied the Application – Defendant contacted PTI's CEO and advised that he had secured funding from an undisclosed third party who was willing to acquire Balesia's interest in Nuevatel.  *Id.* ¶ 43.[2]  Defendant sought a waiver of PTI's veto rights to allow for the acquisition of Balesia's interest.  *Id.*  In the weeks that followed, an individual named Cyrill Wiget ("Wiget") contacted both PTI's CEO and Balesia's CEO expressing interest in, and ultimately making a non-binding offer to acquire, Balesia's interest in Nuevatel.  *See id.* ¶¶ 44-46.  The offer letter submitted by Wiget was signed by the President of Los La Pachos, S.A., which the letter indicated was an affiliate of Supercanal,

---

[2] This was not the first time that Defendant expressed interest in purchasing a majority stake in Nuevatel.  Between 2019 and 2021, Defendant approached PTI on several occasions seeking tentative approval to purchase Trilogy's interest in Nuevatel.  *See id.* ¶ 27.

S.A. *Id.* ¶ 46. The SAC alleges that Defendant is "affiliated" with Wiget and the offer that he submitted. *See id.* ¶ 50. The SAC also alleges that some "direct connection" exists between Defendant and the Bolivian Regulator's decision to deny the Application. *See id.* ¶¶ 46-50.

Consequently, Plaintiffs commenced this lawsuit against Defendant, with Nuevatel asserting a claim for breach of fiduciary duty (Count I) and both Plaintiffs asserting a claim for tortious interference (Count II). The Court dismissed Plaintiffs' Amended Complaint but granted Plaintiffs leave to amend. *See* [DE 26], [DE 30]. The SAC, filed on May 31, 2023, brings the same two claims but attempts to frame them somewhat differently than Plaintiffs' Amended Complaint. In Count I of the SAC, Nuevatel alleges that Defendant breached his fiduciary duties to Nuevatel in three ways: (1) by "disclosing Nuevatel's confidential information to third parties, including Roque Roy Mendez,[3] Rios, Cyrill Wigett, Los La Pachos, and Supercanal"; (2) by "conspiring with third parties to prohibit or delay Balesia's acquisition of Nuevatel"; and (3) by "entering into contracts on behalf of Nuevatel that were self-dealing and benefitted only Calvo and harmed Nuevatel." SAC ¶ 56. In Count II, Plaintiffs allege that Defendant tortiously interfered with business relationships between (a) Nuevatel and Balesia, (b) Nuevatel and PTI, (c) Nuevatel and the Bolivian Regulator, (d) Balesia and PTI, (e) Balesia and its prospective investment partners, and (f) Balesia and the Bolivian Regulator. *See id.* ¶¶ 59-62. According to Count II, Defendant interfered with these business relationships "through his acts and omissions, causing the denial of the Application." *Id.* ¶ 61. Additionally, Plaintiffs allege in Count II that their damages were "proximately caused by Calvo's conduct in conspiring to cause the denial or delay in approval of the Application." *Id.* ¶ 62.

---

[3] Roque Roy Mendez is the CEO of Entel, one of three major nationally licensed mobile network operators in Bolivia (Nuevatel being one of the other three). SAC ¶¶ 47-48. He previously served as the Executive Director of the Bolivian Regulator (from 2016-2019). *Id.* ¶ 48.

**LEGAL STANDARD**

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch.*, 942 F.3d at 1229; *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

<u>ANALYSIS</u>

**A.  COUNT I (BREACH OF FIDUCIARY DUTY)**

The SAC, like Plaintiffs' Amended Complaint, still fails to contain sufficient factual allegations to state a claim to relief that is plausible on its face.  A plaintiff must prove three elements to establish a claim for breach of fiduciary duty: "the existence of a fiduciary duty, a breach of that duty, and that the plaintiff's damages were proximately caused by the breach." *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 989 (11th Cir. 2020) (citing *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)).

Plaintiffs adequately allege that Defendant owed fiduciary duties to Nuevatel until Defendant ceased serving as Chairman on March 29, 2022.  This is not disputed (at least for purposes of the Motion).  In connection with their Amended Complaint, Plaintiffs took the position that Defendant continued to owe fiduciary duties to Nuevatel – based on a power of attorney – for several months after Defendant's chairmanship ended; however, the Court rejected Plaintiffs' position.  *See* [DE 26] at 9-12; [DE 30] at 2-3.  Now, though, Plaintiffs concede that Defendant no longer owed fiduciary duties to Nuevatel as of March 29, 2022.  *See* [DE 36] at 12 ("Nuevatel agrees that Calvo did not owe fiduciary duties to Nuevatel after he resigned.").  Regardless, Defendant did owe such duties to Nuevatel until March 29, 2022.  Thus, the issue becomes whether Defendant breached his duties to Nuevatel while those duties existed.  Again, Plaintiffs allege three separate types of wrongdoing.  As discussed herein, Plaintiffs have failed to plausibly allege any breach.

**1.  Efforts to Derail Bolivian Regulator Approval**

Plaintiffs allege that Defendant breached his fiduciary duty to Nuevatel by "conspiring with third parties to prohibit or delay Balesia's acquisition of Nuevatel."  SAC ¶ 56(b).  Defendant

interprets this allegation to be referring to Defendant's alleged interference with the Bolivian Regulator's decision. *See* Motion at 5-7. I agree with this interpretation based upon the general allegations of the SAC (and Plaintiffs do not appear to contend otherwise in their response). In fact, early in the SAC, Plaintiffs allege that while Defendant was still Nuevatel's Chairman, Defendant "put into plan his scheme (described more fully in the General Allegations) to thwart Nuevatel's efforts to obtain Bolivian regulatory approval of Balesia's purchase of Nuevatel." SAC ¶ 4. Regardless, the SAC lacks sufficient factual allegations to plausibly allege that Defendant "conspir[ed] with third parties to prohibit or delay Balesia's acquisition of Nuevatel" by some means other than allegedly interfering with the Bolivian Regulator's decision. And, as discussed below, the SAC similarly lacks sufficient factual allegations to plausibly link Defendant to the Bolivian Regulator's decision.

First, some background regarding the dismissal of Plaintiffs' Amended Complaint is appropriate. As I noted in my Report and Recommendation [DE 26] ("Apr. 2023 R&R") regarding Plaintiffs' Amended Complaint, the primary wrongdoing alleged concerned Defendant's alleged interference with the Bolivian Regulator's decision following Defendant's tenure as Chairman (i.e., when Defendant no longer owed fiduciary duties to Nuevatel). Regardless, I found that even if Defendant owed fiduciary duties to Nuevatel when his alleged conduct concerning the Bolivian Regulator had occurred, Plaintiffs failed to plausibly allege a link between Defendant and the Bolivian Regulator's decision. The District Court agreed. [DE 30] at 3.

Plaintiffs have once again failed to plausibly allege any such link. In other words, Plaintiffs still fail to plead factual content that allows the Court to draw the reasonable inference that Defendant interfered with the Bolivian Regulator's decision or that Defendant had anything to do

with the suspicious actions of the Bolivian Regulator.  Plaintiffs primarily rely on the following

two allegations to attempt to connect Defendant to the Bolivian Regulator's decision and actions:

> 49. There is a direct connection between Calvo, and Calvo's desire to acquire Nuevatel, and the adverse actions Rios and the Bolivian Regulator have taken with respect to the Application. Roque Roy Mendez is able to and has exercised influence over Rios and the Bolivian Regulator in connection with such adverse actions.
>
> 50. Calvo is affiliated with Cyrill Wiget, Roque Roy Mendez, Los La Pachos, and/or Supercanal in connection with overtures that Balesia has received seeking to acquire Balesia's equity ownership interest in Nuevatel, and PTI has received seeking a waiver of PTI's veto rights in connection with any change of ownership of Nuevatel.

SAC ¶¶ 49-50.  Notably, with one limited exception, these are the exact same allegations that

Plaintiffs relied on in their Amended Complaint to attempt to establish a link between Defendant

and the Bolivian Regulator's decision.  Previously, Plaintiffs made these allegations "upon

information and belief."  *See* [DE 18] ¶¶ 43, 44.  While "upon information and belief" has now

been deleted from these allegations, the allegations otherwise remain the same.  No factual

allegations have been added.

Plaintiffs' allegations were insufficient in their Amended Complaint, and the essentially

identical material allegations in the SAC remain insufficient.  While much of the briefing around

the first Motion to Dismiss concerned Plaintiffs' use of the phrase "upon information and belief,"

the removal of this phrase does nothing to cure the biggest issue with the allegations in paragraphs

49 and 50 – that they are conclusory allegations that are not backed up by factual allegations.  It is

true that Rule 8 does not require detailed factual allegations.  However, "it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."  *Newbauer v. Carnival Corp.*, 26

F.4th 931, 934 (11th Cir. 2022) (citation omitted).

Here, Plaintiffs again fail to allege any facts to establish what the supposed "direct connection" is between Defendant, his "desire to acquire Nuevatel, and the adverse actions Rios and the Bolivian Regulator have taken with respect to the Application." SAC ¶ 49. Likewise, Plaintiffs do not allege any facts to explain how Roque Roy Mendez ("Mendez") has "exercised influence over Rios and the Bolivian Regulator in connection with such adverse actions." *Id.* And even if Plaintiffs had alleged any facts to plausibly show that Mendez exercised such influence, they have failed to explain how Defendant had anything to do with Mendez's actions beyond alleging a conclusory "affiliation." *See id.* ¶ 50. Also, while the SAC includes an allegation indicating that Wiget received PTI's CEO's private phone number from Defendant, *see id.* ¶ 44, the SAC otherwise includes little to no facts to establish the conclusory allegations of an affiliation in paragraph 50. Additionally, the following observations that I made in the Apr. 2023 R&R still hold true, notwithstanding the limited changes made in the SAC:

> Simply because the circumstances surrounding the Bolivian Regulator's denial of the Application, including the public statements made by Rios, may have been suspicious does not mean that it is reasonable to infer that Defendant had anything to do with the Bolivian Regulator's decision. Nor does adding into the equation Defendant's repeated, expressed interest in purchasing a majority stake in Nuevatel make it reasonable to infer a link between Defendant and the Bolivian Regulator's decision without more. Defendant's interest in purchasing Nuevatel perhaps makes such a link conceivable, but this factual allegation alone does not nudge Plaintiff's claims regarding such a link "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Rather, the Amended Complaint presently alleges nothing more than a conspiracy theory that only ties Defendant to the Bolivian Regulator's decision based on speculation alone. *Cf. Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[A]llegations must proffer enough factual content to 'raise a right to relief above the speculative level.'" (quoting *Twombly*, 550 U.S. at 555)). Because no facts are alleged to plausibly show that Defendant played a role in, or was the impetus behind, the Bolivian Regulator's decision, Defendant's alleged wrongdoing related to the Bolivian Regulator's decision cannot be used to sustain Plaintiffs' claims against Defendant.

Apr. 2023 R&R at 15.

9

Moreover, although the SAC includes a handful of new allegations, it still fails to point to any conduct by Defendant that occurred – with respect to Defendant's alleged wrongdoing concerning the Bolivian Regulator – at a time when Defendant still owed fiduciary duties to Nuevatel.  In the Apr. 2023 R&R, I noted my agreement with Plaintiffs that it was reasonable to characterize the circumstances surrounding the Bolivian Regulator's denial of the Application as suspicious (based on the allegations of the Amended Complaint).  In the SAC, Plaintiffs have added additional allegations concerning the suspicious nature of the Bolivian Regulator's decision. *See* SAC ¶ 36.  Nonetheless, while the Application was submitted to the Bolivian Regulator – on March 7, 2022 – a few weeks before Defendant resigned as Chairman, the SAC does not allege that any suspicious conduct (by Defendant or anyone else) occurred in connection with the Bolivian Regulator's decision until at least May 27, 2022 (two months after Defendant resigned as Chairman).  *See* SAC ¶¶ 31, 36.

At any rate, in their response, Plaintiffs argue that they have alleged actions undertaken by Defendant while he was still CEO and/or Chairman.  They contend that Defendant cannot escape liability for actions that occurred before his resignation simply by having resigned.  That seems to go without saying.  But the SAC is devoid of factual allegations regarding anything Defendant did, prior to March 29, 2022 (the date Defendant resigned), to "conspir[e] with third parties to prohibit or delay Balesia's acquisition of Nuevatel."  Although Plaintiffs do allege that before Defendant resigned as Chairman, he "put into plan his scheme . . . to thwart Nuevatel's efforts to obtain Bolivian regulatory approval of Balesia's purchase of Nuevatel," SAC ¶ 4, the SAC does not contain a single factual allegation regarding anything Defendant did *while still Chairman* to "put into plan his scheme . . . to thwart [such] efforts."  Rather, Plaintiffs rely on the conclusory allegation in paragraph 4 alone to claim that Defendant engaged in misconduct related to the

Bolivian Regulator's decision *while Defendant was still Chairman*.   Significantly, though, "[c]onclusory allegations are not entitled to the assumption of truth."  *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Iqbal*, 556 U.S. at 679); *see also Newbauer*, 26 F.4th at 934 ("[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012))).

Ultimately, Plaintiffs have once again failed to allege sufficient facts to plausibly allege a link between Defendant and the Bolivian Regulator's decision.  Further, they have failed to allege that any misconduct related to the Bolivian Regulator's decision occurred at a time when Defendant still owed fiduciary duties to Nuevatel.  Therefore, Nuevatel cannot sustain its breach of fiduciary duty claim against Defendant based on the conclusory allegations that Defendant "conspir[ed] with third parties to prohibit or delay Balesia's acquisition of Nuevatel" and that Defendant "put into plan his scheme . . . to thwart Nuevatel's efforts to obtain Bolivian regulatory approval of Balesia's purchase of Nuevatel."

### 2.  Disclosure of Confidential Information

Plaintiffs allege that Defendant breached his fiduciary duty to Nuevatel by "disclosing Nuevatel's confidential information to third parties, including Roque Roy Mendez, Rios, Cyrill Wigett, Los La Pachos, and Supercanal."  SAC ¶ 56(a).  In the Motion, Defendants argue that the SAC contains no factual support for this allegation, that the SAC does not allege what "confidential information" Defendant disclosed, and that, at most, Defendant disclosed PTI's CEO's phone number, which is not "Nuevatel's confidential information."  Motion at 8.  Plaintiffs respond that Defendant is effectively trying to hold them to Rule 9's heightened pleading standard, which does not apply to breach of fiduciary duty claims.  They also contend that the allegations are sufficient because Plaintiffs have alleged that Defendant "had access to confidential information related to

the acquisition by Balesia, related to the PTI transactions, and related to the Application" and "shared that information in breach of his duties . . . while he was Chairman."  [DE 36] at 13.

I agree with Defendant that Plaintiffs have failed to allege sufficient facts regarding Defendant's alleged disclosure of confidential information and have therefore failed to plausibly allege that Defendant breached his fiduciary duty on this basis.  The SAC's shortcomings in this regard are not a matter of failing to plead the type of information generally required under Rule 9 – a rule not applicable here – for claims sounding in fraud.  Rather, the issue is Plaintiffs' failure to plead even basic facts, notwithstanding the requirement to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which necessitates "more than 'naked assertions devoid of further factual enhancement,' mere 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action.'"  *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1269 (11th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678).

It is entirely unclear from the SAC what "confidential information" Defendant allegedly disclosed.  The SAC contains seven references to confidential information, most of which are conclusory.  *See* SAC ¶¶ 4, 5, 17, 18, 26, 30, 56.  Paragraph 17 does allege that during Defendant's tenure as CEO (until 2019), "he had access to Nuevatel's confidential and proprietary information, including the identities and contractual proposals submitted by all major suppliers of goods and services."  But Plaintiffs never allege – nor do they now argue – that Defendant disclosed any of the alleged confidential information discussed in paragraph 17 of the SAC.  Rather, as Defendant contends, the only information that the SAC gives any indication Defendant disclosed was PTI's CEO's phone number, which common sense dictates is not confidential information of Nuevatel. *Cf. Newbauer*, 26 F.4th at 934 ("'Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense' in reviewing the plaintiff's allegations. Additionally, 'threadbare recitals of the elements of a cause of action' and 'conclusory statements' are insufficient." (cleaned up) (internal citation omitted)).  Overall, the vague, generalized, and conclusory allegations regarding Defendant's alleged disclosure of confidential information are insufficient to plausibly establish that Defendant breached his fiduciary duties to Nuevatel.  *Cf. Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." (citation omitted)).

### 3.  Self-Dealing Contracts

The third and final manner in which Plaintiffs allege Defendant breached his fiduciary duties to Nuevatel is by "entering into contracts on behalf of Nuevatel that were self-dealing and benefitted only Calvo and harmed Nuevatel."  SAC ¶ 56(c).  In the Motion, Defendant argues that Nuevatel's breach of fiduciary duty claim on this basis is time-barred and that even if not time-barred, Nuevatel has not plausibly alleged a breach on this basis.  While I disagree with Defendant that the claims are time-barred based on the face of the SAC[4] (because I agree with Plaintiffs' relation-back argument),[5] I do agree that the limited allegations regarding the alleged self-dealing contract issue are insufficient to plausibly establish any breach.  Notably, Plaintiffs failed to even respond to Defendant's argument regarding the sufficiency of the allegations.

---

[4] *See Karantsalis v. City of Miami Springs, Fla.*, 17 F.4th 1316, 1319-20 (11th Cir. 2021) ("[D]ismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." (citation and internal quotation marks omitted)).

[5] Plaintiffs' self-dealing contract contention is primarily based on the allegations in paragraph 51 of the SAC, which, as discussed further below, are nearly identical to the allegations included in paragraph 30 of Plaintiffs' Amended Complaint.

The alleged self-dealing contract issue was also raised in Plaintiffs' Amended Complaint. *See* [DE 18] ¶ 30.  As discussed in the Apr. 2023 R&R, I found that Plaintiffs failed to provide notice that Count I of their prior Complaint was premised upon Defendant's alleged wrongdoing related to the self-dealing contracts.  Nonetheless, I also explained that even if Count I had indicated it was premised upon such alleged wrongdoing, the factual allegations necessary to establish such wrongdoing were lacking.

Now, in the SAC, Plaintiffs clearly provide notice that Count I is based (in part) on the alleged self-dealing contracts.  *See* SAC ¶ 56(c).  However, the factual allegations necessary to plausibly establish such wrongdoing are still absent.  The SAC alleges as follows:

> Based on recommendations or instructions made by Balesia, Nuevatel cancelled dozens of "consulting" and similar contracts for marketing, advertising and other services that were wasteful, unnecessary, and/or redundant of services being performed directly by Nuevatel employees. Some or all of the cancelled contracts (and potentially other contracts not yet discovered) had been negotiated or approved by Calvo, his family members, entities affiliated with Calvo, and/or Nuevatel employees at Calvo's instigation, in exchange for improper payments or other consideration received by or for the benefit of Calvo from the contractual counter-parties. Nuevatel has suffered damages as a result of signing or maintaining in force these contracts containing improper and unnecessary payments to the contracting counter-parties.

SAC ¶ 51.  Notably, the only substantive change between paragraph 51 of the SAC and paragraph 30 of Plaintiffs' Amended Complaint is the deletion of "upon information and belief" at the beginning of the second sentence.

But like certain allegations in the preceding sections, the heart of the problem with Plaintiffs' allegations in paragraph 51 of the SAC is that they merely contain labels, conclusions, and naked assertions devoid of further factual enhancement.[6]  For instance, as noted in the Apr.

---

[6] Plaintiffs also added an allegation in paragraph 5 of the SAC that the contracts "disadvantaged Nuevatel and benefitted only Calvo."  Although paragraph 5 indicates this allegation is described

2023 R&R, Plaintiffs characterize the contracts as "wasteful, unnecessary, and/or redundant," but they do not provide *any* non-conclusory factual allegations to establish why this is so (or why it is reasonable for the Court to infer such a characterization). Again, while detailed factual allegations are not required, Plaintiffs were required to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also* [DE 26] at 18 n.13. They have once again failed to do so.

Plaintiffs have also failed, once again, to include factual allegations to plausibly show that Defendant breached his fiduciary duty as a result of any role he played in negotiating or approving these contracts (even assuming the contracts were wasteful, unnecessary, or redundant). They did add an allegation that Defendant "was ultimately responsible for all operations of Nuevatel, and specifically responsible for approval of and in many cases signature of all contracts between Nuevatel and third parties above a certain value threshold, which during his tenure exceeded 1,000 contracts having an aggregate value exceeding $100 million." SAC ¶ 17. But, at most, the limited allegations are merely consistent with liability. And "a plaintiff's factual allegations that are merely consistent with a defendant's liability will not be considered facially plausible." *Newbauer*, 26 F.4th at 934 (citation and internal quotation marks omitted). Accordingly, Count I of the SAC should be dismissed.

### B.  COUNT II (TORTIOUS INTERFERENCE)

Count II fails to state a plausible claim for tortious interference. Under Florida law, a plaintiff must establish the following elements to prevail on a claim for tortious interference with a business relationship: "(1) the existence of a business relationship under which the plaintiff has

---

more fully in the general allegations, the only further description of the allegation is in paragraph 51 of the SAC, which is inadequate for the reasons discussed herein.

legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) *damage to the plaintiff as a result of the breach of the business relationship*." *Bortell v. White Mountains Ins. Grp., Ltd.*, 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009) (quoting *N. Am. Van Lines, Inc. v. Ferguson Transp., Inc.*, 639 So. 2d 32, 33 (Fla. 4th DCA 1994)) (emphasis added); *see also Duty Free Americas, Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1279 (11th Cir. 2015). "This cause of action requires 'a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.'" *Bortell*, 2 So. 3d at 1048 (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994)). "[T]he alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights," but "[a] protected business relationship need not be evidenced by an enforceable contract." *Ethan Allen*, 647 So. 2d at 814 (citations omitted).

Moreover, "[a]n integral element of a claim of tortious interference with a business relationship requires proof of damage to the plaintiff *as a result of the breach of the relationship*." *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985)) (emphasis added). Relatedly, "[u]nsuccessful interference is simply not the kind of interference upon which a tort may be founded." *Id.* (quoting *Am. Med. Int'l, Inc. v. Scheller*, 462 So. 2d 1, 9 (Fla. 4th DCA 1984)).[7] "To properly state a claim for tortious interference, a plaintiff must show that a defendant's actions directly harmed the plaintiff." *Miracle 7, Inc. v. Halo Couture, LLC*, No. 13-61643-CIV, 2014 WL 11696708, at *4 (S.D. Fla. Jan. 17, 2014) (Rosenbaum, J.) (citation omitted).

---

[7] *See also Adv. Magnet Lab, Inc. v. Meinke*, No. 6:20-CV-712-ORL-37EJK, 2020 WL 9549853, at *3 (M.D. Fla. Nov. 24, 2020); *Sandshaker Lounge & Package Store LLC v. RKR Beverage Inc*, No. 3:17-CV-00686-MCR-CJK, 2018 WL 7351689, at *7 (N.D. Fla. Sept. 27, 2018).

In their Amended Complaint, Plaintiffs alleged that Defendant tortiously interfered with the business relationship between Plaintiffs and PTI.  *See* [DE 18] ¶¶ 50-54.  Although it was unclear from the Amended Complaint how Defendant allegedly interfered, Plaintiffs argued in their response to the prior motion to dismiss that Defendant interfered by (1) attempting to induce PTI to waive its veto rights to the detriment of Balesia and Nuevatel and (2) making unsolicited offers to Balesia to purchase Balesia's interest in Nuevatel.  *See* [DE 11] at 6.  In rejecting Plaintiffs' tortious interference claim, I explained that Plaintiffs failed to plausibly allege the fourth tortious interference element – "damage to the plaintiff as a result of the breach of the business relationship."  Apr. 2023 R&R at 19 (quoting *Bortell*, 2 So. 3d at 1048).  I also explained that, at most, Plaintiffs had alleged unsuccessful interference, and that the allegations of the Amended Complaint indicated that the relationship between Plaintiffs and PTI remained intact.[8]

Now, in the SAC, Plaintiffs allege that their tortious interference claim stems from Defendant's actions that caused the denial of the Application.  *See* SAC ¶¶ 61-62.  In other words, Plaintiffs allege that Defendant's actions damaged them because their damages resulted from the denial of the Application, which Defendant caused.  *See id.*  The problem here, however, is that, as discussed above, Plaintiffs have failed to plausibly allege that Defendant caused the denial of the Application.  *See supra* Part A.1.  Thus – although Count II also suffers from other deficiencies – the Court need not proceed any further in concluding that Count II should be dismissed given that Plaintiffs have failed to plausibly allege that Defendant's actions directly harmed Plaintiffs.

---

[8] *Cf. Am. Med. Int'l*, 462 So. 2d at 9 ("In the context of this case, the fact that no doctor abandoned or breached the existing relationship with Dr. Scheller was of crucial significance. Since the relationships between Dr. Scheller and the 63 designating physicians remained intact, there was no cause of action proved . . . .").

Stated differently, Plaintiffs' failure to include factual allegations in the SAC that plausibly tie Defendant to the Bolivian Regulator's decision is fatal to Count II.

### C.  DISMISSAL WITH PREJUDICE

For the reasons argued in the Motion, dismissal should be ***with prejudice***.  In dismissing Plaintiffs' Amended Complaint, the Court granted Plaintiffs "<u>one final</u> opportunity to cure the pleading deficiencies identified in" the Apr. 2023 R&R, and the Court advised Plaintiffs "that their Second Amended Complaint will necessitate <u>substantially</u> more factual development to comply with the required pleading standards should they wish to proceed with this action."  [DE 30] at 2, 4 (emphasis added).  However, Plaintiffs failed to cure the pleading deficiencies discussed in the Apr. 2023 R&R.  Although Plaintiffs did add some factual allegations to the SAC, the only well-pled factual allegations they added do not rectify (or even relate to) the deficiencies highlighted in the Apr. 2023 R&R.  As an example, as discussed above, Plaintiffs provided more factual allegations regarding the suspicious actions of the Bolivian Regulator (even though they had already plausibly pled that the Bolivian Regulator and Rios acted suspiciously), but they did not add any well-pled factual allegations to plausibly link Defendant to the actions of the Bolivian Regulator and Rios.  Ultimately, Plaintiffs' failure to cure the deficiencies with their allegations, notwithstanding the Court's clear warning about what the result would be if they did not, warrants dismissal with prejudice.[9]

---

[9] I also note that Plaintiffs have not responded to Defendant's argument that any dismissal should be *with prejudice*.  Nor have Plaintiffs requested leave to amend.  *See Newbauer*, 26 F.4th at 936 ("[O]ur precedent is clear that '[a] district court is not required to grant a plaintiff leave to amend [her] complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.'" (quoting *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002))).

## **CONCLUSION**

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 32]

be **GRANTED** and that this case be **DISMISSED** *with prejudice*.

The parties will have fourteen (14) days from the date of being served with a copy of this

Report and Recommendation within which to file written objections, if any, with the Honorable

Rodolfo A. Ruiz, II, United States District Judge.  Failure to timely file objections shall bar the

parties from a *de novo* determination by the District Judge of an issue covered in the Report and

shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained

in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28

U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790,

794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 28th day of August 2023.

**Jared M. Strauss**
**United States Magistrate Judge**